Birchard, O. J.
A bill of lading is a special contract, and as a general rule is not to be varied or altered by parol evidence. The contract imposes the duty of delivery according to its terms as understood by the contracting parties at the time of entering into the same. Where there is nothing in the nature of the business which is the subject of the contract to control the meaning of its terms, the instrument must be interpreted, and its meaning gathered from the instrument itself, without resort to any parol •testimony.
In reference to bills of lading, where some of its terms, applicable to the business contracted for, have, by the course of trade and the usages of those concerned in it, acquired a particular .signification in reference to an established usage of the trade, a legal presumption arises that the persons engaged in such trade used such terms in their contract according to that acceptation, and in the sense recognized by the trade. The owners of the General Pike claimed that there was a general and well-established usage known to carriers, consignees, and consignors, and all persons concerned in freighting goods by steamboats on the rivers Ohio and Mississippi, by which a contract of lading, to deliver from a steamboat goods to a person residing at Memphis is understood to mean a delivery to A. B, Shaw & Co., owners of a wharf-boat lying in the stream opposite the town, who, by «aid usage, are the general agents of all consignees residing at Memphis.
From the bill of exceptions it appears the attempt was made to establish such a usage, although the proof was objected to. Wo are not prepared to say that the court erred in overruling the plaintiff’s objections, and allowing the defendant to introduce proof in order to establish this supposed usage and its reasonableness. Nor do we mean to say that, on some of the points ruled by the court, it is quite clear that error did not intervene. But as *358 suming that *thero was nothing erroneous in the decision on all the points ruled in the admission and rejecting of testimony, and also in the instruction given to the jury, we have come to the conclusion, with entire unanimity, that the superior court did err in refusing to grant a new trial.
The usage attempted to be established by proof was, to say the least, of a very extraordinary character—one that might in practice become very injurious to the interests of shippers, consignees, and owners; and its supremacy should not be allowed to be established without clear and satisfactory proof of its actual existence, and of the general acquiescence therein by the public. If it is convenient to owners of steamboats and consignors to land goods at wharf-boats without notice to the consignee, and they can not conduct their business without being allowed this privilege, it is not difficult to provide, in their bills of lading, a form to meet the case.
Now what did the proof show ? Not that any such usage as that contended for was understood generally at either Memphis or Cincinnati, nor that it had been universally the custom. Several merchants of Cincinnati engaged in shipping goods to Memphis had never heard of such a usage. They state that when they consign goods, they consign them to the person to whom they belong, unless specially directed to have them left at the wharf-boat of Shaw & Co. The other merchants, who spoke of having known that such a practice prevailed among captains of transient-steamboats, speak of Shaw & Co. refusing to receive goods of boats that would not make their bills good, and that they were-not authorized to open bills of lading or letters, except for certain persons residing at Memphis. Several persons, also residing at Memphis, say there is no such usage known, although steamboats generally deposit at the wharf-boat and pass on. Indeed, without-, going minutely through the great mass of testimony, it is sufficient lor us to say, in general terms, that the most that could be made of the evidence, and all that it established, was, that ^steamboats have been for several years in the practice of landing goods at places upon the river where wharf-boats are stationed, with the keepers of the wharf-boat, and intrusting them •with the duty of the delivery to the consignee, and then passing on without further care than to secure their freight; and that where the goods have eventually come to the proper hands, and *359 no difficulty has occurred, no one has made any complaint. This, instead of proving a custom which is to control the torms of a bill of lading, and become a part of the law of the contract, is proving a very loose practice, which can not terminate the responsibility of the carrier, which the courts ought to aid the proprietors of steamboats in correcting for the benefit of community. If captains of steamboats will land goods thus, the owners of the boat must be made to understand that they are responsible for the loss, provided the goods fail in coming to the hands of the true owner or consignee. If a loss happen, they can not force the consignor to look to the proprietor of the wharf-boat for remuneration. He may make the steamboat answerable for the damage. If not satisfied with this risk, boats can decline the responsibility of assuming it, and stipulate, by their bills of lading, for a delivery on the wharf-boat, and at no other place, as the proof shows that many have been in the practice of doing, A new trial should have been granted, on the ground that the evidence not only did not establish, but strongly disproved the defense that was attempted to be made. Judgment revorsed.